UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WALTER HERNANDEZ ALVAREZ,
Plaintiff,

-v-

LAWRENCE CATLETTI, *et al.*,
Defendants.

26-CV-7055 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Walter Hernandez Alvarez has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that the revocation of his release on an Order of Supervised Release ("OSUP") and subsequent detention are unlawful under statutory and regulatory provisions, as well as the Due Process Clause of the United States Constitution. (*See generally* ECF No. 1.) Alvarez therefore seeks a writ of habeas corpus ordering Lawrence Catletti, Kenneth Genalo, and Markwayne Mullin (collectively, "Respondents") to immediately release him from custody. (*Id.*)

## I. Background

### A. Factual Background

Except where otherwise noted, the following facts are undisputed. Petitioner Walter Hernandez Alvarez is currently being detained by Immigration and Customs Enforcement ("ICE") at the Orange County Jail ("OCJ") in Goshen, New York. (ECF No. 9 at 18.) Alvarez is a native and citizen of El Salvador. (*Id.* at 14.) On April 22, 2023, Alvarez entered the United States without inspection at the U.S.-Mexico border, where he was taken into custody by a U.S. Customs and Border Protection ("CBP") officer. (*Id.*) On April 23, 2023, CBP provided Alvarez with a Notice and Order of Expedited Removal, charging him as inadmissible due to his lack of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid

entry document. (*Id.* at 15; *see also* ECF No. 7-3 at 2.) The Department of Homeland Security ("DHS") subsequently served Alvarez with a Notice to Appear on May 10, 2023 that commenced removal proceedings in immigration court in San Diego, California. (*See* ECF No. 7-4 at 3.) During those removal proceedings, Alvarez was mandatorily detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). (ECF No. 9 at 15-16.)

However, the U.S. Citizenship and Immigration Services ("USCIS") provided Alvarez with a credible fear interview on May 4, 2023 because Alvarez expressed a fear of gang violence if he were to be deported to El Salvador. (*Id.* at 15.) At that interview, USCIS determined that Alvarez had a credible fear of return to El Salvador. (*Id.*) On August 10, 2023, Alvarez filed an application for asylum as relief from removal. (*Id.* at 16.) On November 1, 2023, after a merits hearing, the immigration judge denied Alvarez's application for asylum and issued an order for removal to El Salvador. (*Id.*) On appeal, the Board of Immigration Appeals ("BIA") remanded the matter to the immigration court for a new decision due to inadequate representation by Alvarez's counsel and procedural defects underlying the original order. (*Id.*; *see also* ECF No. 1 ¶ 24.)

On September 12, 2024, the immigration court issued a new decision, which again denied Alvarez's application for relief from removal from the United States, but this time, the immigration court granted a deferral of removal to El Salvador under the Convention Against Torture ("CAT"). (ECF No. 9 at 16; *see also* ECF No. 7-5). Neither party appealed the immigration court's order, so it became administratively final at the lapse of the appeal window on October 14, 2024. (ECF No. 9 at 16.) Alvarez was subsequently detained pursuant to 8 U.S.C. § 1231(a)(6), pending removal. (*Id.*) ICE subsequently requested that Guatemala, Nicaragua, and Panama accept Alvarez; none of those countries accepted. (*Id.*)

Thereafter, on December 16, 2024, ICE determined that there was no significant likelihood of removal in the reasonably foreseeable future and released Alvarez pursuant to an OSUP. (*Id.*; *see also* ECF No. 7-6.) Following his release, Alvarez relocated to New York, where he lived without incident for more than eighteen months. (ECF No. 1 ¶¶ 26-27; *see also* ECF No. 9 at 16.) The OSUP required that Alvarez regularly report to ICE and assist in obtaining any necessary travel documents. (ECF No. 9 at 16.) Alvarez reported to ICE for multiple in-person meetings on December 23, 2024, July 2, 2025, and July 6, 2026. (*Id.*)

However, on July 6, 2026, when Alvarez reported to his scheduled OSUP meeting with ICE, ICE revoked his OSUP and immediately detained him. (*Id.* at 17.) In doing so, ICE served Alvarez with a Notice of Revocation of Release. (*Id.*; *see also* ECF No. 7-7.) That Notice of Revocation of Release ostensibly relied on 8 C.F.R. § 241.13(i) to revoke Alvarez's release on the basis that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 7-7 at 2.) In support, the Notice provided only that ICE was considering removing Alvarez "to an alternate country"—it did not disclose his potential removal to Mexico. (*Id.* at 3.)

Also on July 6, 2026, ICE provided Alvarez with an informal interview "to afford him an opportunity to respond to the reasons for the revocation of his OSUP." (ECF No. 9 at 17.) Respondents provide notes apparently taken by a deportation officer in that interview, summarizing an "oral response" from Alvarez, in which Alvarez explained that "his detention is not justified, as he was previously detained for over two years," "he has family obligations, including providing for his mother and son in El Salvador, as well as two daughters in the United States," and "he claims to be a worker who supports his family and has not committed any crimes since his arrival in the United States." (ECF No. 7-8 at 2.) The meeting notes also state

that Alvarez provided a written statement, but do not attach or otherwise describe Alvarez's written statement. (*Id.*) ICE then arrested Alvarez pursuant to a Warrant of Removal/Deportation based on his final order of removal. (ECF No. 9 at 17; *see also* ECF No. 7-9.) ICE also provided Alvarez with a Warning for Failure to Depart, among other documents, which explained Alvarez's obligations to assist with obtaining necessary travel documents for departure and to not connive to prevent departure. (ECF No. 9 at 17-18; *see also* ECF No. 7-11 at 2.) Alvarez was then transferred to OCJ, where he remains today. (ECF No. 9 at 18.)

On July 16, 2026, ICE—for the first time—revealed its intention to remove Alvarez to Mexico by serving him with a Notice of Removal, which Alvarez refused to sign. (*Id.* at 18; *see also* ECF No. 7-13.) On July 30, 2026, USCIS conducted a third country screening for Alvarez's removal to Mexico, after which USCIS determined that Alvarez failed to establish that it was more likely than not that he would be persecuted or tortured in Mexico. (ECF No. 9 at 18; *see also* ECF No. 7-14.) On August 7, 2026, ICE issued another Notice of Removal, which Alvarez similarly refused to sign. (ECF No. 9 at 18; *see also* ECF No. 7-15.) On August 10, 2026, ICE issued a Notice of Failure to Comply, purporting to establish that Alvarez failed to comply with his obligations to obtain travel documents and not connive to prevent removal by refusing to sign the third-country removal notice. (ECF No. 9 at 18; *see also* ECF No. 7-16.)

On July 31, 2026, Alvarez filed in the immigration court an "Emergency Motion to Reopen Based on DHS's Intent to Deport [Alvarez] to a Nondesignated Third Country Without an Opportunity to Contest Removal Based on His Fear of Persecution and Torture." (*See* ECF No. 1-1.) On August 11, 2026, the immigration court granted Alvarez's motion to reopen, specifying that it did so because of DHS's "recent intent to remove [Alvarez] to Mexico, as an alternate country of removal," and because Alvarez "was not on notice by [DHS] of this intent at

the time of either his original removal proceedings [or] his remanded proceedings." (*See* ECF No. 1-2 at 2.)

### B. Procedural Background

On August 18, 2026, Alvarez filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* ECF No. 1.) The Court issued an Order to Answer, directing (1) Respondents to file a letter with information about Alvarez's status; (2) Respondents to answer the petition; (3) Alvarez to file any reply; and (4) both parties to attend a telephonic conference on August 25, 2026. (*See* ECF No. 3 at 1-2.) To preserve its jurisdiction, the Court also ordered that Alvarez not be removed from the United States. (*Id.* at 2 (citing *Khalil v. Joyce*, No. 25-CV-1935, 2025 WL 750599, at *1 (S.D.N.Y. Mar. 10, 2025)).)

Respondents filed a response to the Order to Answer on August 21, 2026. (ECF No. 5.) Respondents then filed a response in opposition to Alvarez's habeas petition on August 24, 2026 (ECF No. 7), accompanied by a declaration (ECF No. 8) and a memorandum of law (ECF No. 9). Following the telephonic conference on August 25, 2026, Alvarez filed a reply on August 31, 2026. (ECF No. 10.)

## II. Discussion

Alvarez's petition raises several challenges to his detention. Because the Court concludes that the Notice of Revocation of Release (the "Notice") itself violated Alvarez's procedural due process rights and that the limited reopening of Alvarez's immigration proceedings does not trigger mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), the Court need not address Alvarez's other grounds.

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention

orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (citing *Boumediene v. Bush*, 553 U.S. 723, 781-83 (2008)). A claim that ICE revoked Alvarez's OSUP and detained him "without providing the required notice and an opportunity to be heard . . . implicate[s] the Due Process Clause." *Zhu v. Genalo*, 798 F. Supp. 3d 400, 408 (S.D.N.Y. 2025); *see also Chipantiza-Sisalema v. Francis*, No. 25-CV-5528, 2025 WL 1927931, at *3-4 (S.D.N.Y. July 13, 2025) (holding that ICE's failure to comply with procedures already in place amounts to a denial of due process); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495-96 (S.D.N.Y. 2025) (same). "Those basic due process protections apply no less to persons like [Alvarez]—that is, a non-citizen . . . who has been served with a final order of removal." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 322 (E.D.N.Y. 2025).

**A. Applicability of 8 C.F.R. § 241.13(i)**

Respondents contend that Alvarez's OSUP was properly revoked "pursuant to 8 C.F.R. § 241.13(i) because circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 9 at 17 (cleaned up).) They are wrong.

Courts have consistently recognized that "the Government may rely on Section 241.13(i) to revoke an OSUP *only if* the Government first issued the OSUP pursuant to Section 241.13's 'special review procedures.'" *E.M.M. v. Almodovar*, No. 25-CV-8212, 2025 WL 3077995, at *4 (S.D.N.Y. Nov. 4, 2025) (emphasis added); *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *Grigorian v. Bondi*, No. 25-CV-22914, 2025 WL 2604573, at *5 (S.D. Fla. Sep. 9, 2025). That requirement is derived directly from the text of § 241.13, which establishes that its "scope" and the imposition of its "special review procedures" reach cases only when "the alien has provided good reason to believe there is no significant likelihood of removal." 8 C.F.R. § 241.13(a). Indeed, § 241.13 goes on to specify that the general revocation provision, § 241.4, "shall continue to govern the detention of aliens under a final order of removal, . . . *unless* the

Service makes a determination *under this section* that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* § 241.13(b)(1) (emphases added). "These provisions both suggest that the procedures of Section 241.13—including its revocation procedure codified at 241.13(i)(2)—only become available to the Government after an alien made an initial showing that there was no likelihood the Government could remove him or her, causing the Government to release the alien pursuant to Section 241.13's special review procedures." *E.M.M.*, 2025 WL 3077995, at *4.

Here, Alvarez's OSUP was not granted under § 241.13. Section 241.13 "begins with a 'written request,' entails a formal review procedure, and culminates in a 'written decision.'" *Id.* at *5 (quoting 8 C.F.R. § 241.13(d)(1), (e), (f), (g), (h)). No party contends that these steps were undertaken in Alvarez's initial detention. And Alvarez's OSUP contains no reference or intimation that it was made pursuant to § 241.13. (*See generally* ECF No. 7-6.) Instead, the OSUP establishes that it was granted because Alvarez's removal was "not effected . . . during the period prescribed by law." (*Id.* at 2.) Because the procedures necessary to apply § 241.13 were not undertaken in the grant of Alvarez's OSUP, revocation of his OSUP cannot have been made under § 241.13. Instead, Alvarez's OSUP "was issued under Section 241.4, and thus could have been revoked consistent with due process only if the Government complied with its own regulations as set out in Section 241.4(l)." *E.M.M.*, 2025 WL 3077995, at *5.

**B. Procedural Deficiencies Under 8 C.F.R. § 241.4(*l*)**

Having established that the applicable rubric for the viability of Alvarez's OSUP revocation is § 241.4(*l*), the Court now concludes that Respondents failed to adhere to the procedural requirements instantiated in that regulatory provision.

As a threshold matter, § 241.4(*l*) permits revocation of an OSUP on two grounds: (1) violation of an OSUP condition; or (2) discretionary determination by the Service. Because

Respondents hang their hat on revocation pursuant to § 241.13(i), Respondents do not specify which prong of § 241.4(*l*) applies here. But under either ground for revocation, ICE must provide adequate "notice of the reasons for revocation . . . and an initial informal interview promptly after . . . return to custody that afford[s] [the detainee] an opportunity to respond to the reasons for revocation." *Zhang v. Bondi*, No. 25-CV-10418, 2026 WL 42778, at *3 (S.D.N.Y. Jan. 7, 2026); *see also Zhang*, 2025 WL 3733542, at *10. Thus, ICE's failure to comply with its own regulations under § 241.4(*l*) renders Alvarez's OSUP revocation improper, regardless of the applicable prong of § 241.4(*l*).

As this Court explained in *Zhang v. Bondi*, notices of OSUP revocation are "deficient when they fail to make *specific* findings as to the appropriateness of enforcing a removal order." 2026 WL 42778, at *3 (emphasis added); *see also Torres-Jurado v. Biden*, No. 19-CV-3595, 2023 WL 7130898, at *4 (S.D.N.Y. Oct. 29, 2023). That requirement stems from the text of § 241.4(*l*), which mandates that ICE provide a petitioner with notice of "the *reasons* for revocation of his or her release." 8 U.S.C. § 241.4(*l*)(1) (emphasis added). "The undisputed purpose of this requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang*, 814 F. Supp. 3d at 324. Accordingly, "[f]ailure to make such [specific] findings violates 8 C.F.R. § 241.4(*l*) and due process." *Zhang*, 2026 WL 42778, at *3; *see also Rombot*, 296 F. Supp. 3d at 388 ("[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid.'" (alterations in original) (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993))).

Here, Respondents' findings supporting Alvarez's removal fall short of the specificity required under § 241.4(*l*). The Notice merely provides boilerplate language that

"[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" because Alvarez was "under review for removal to an alternate country" without identifying Mexico as the potential deportation destination. (ECF No. 7-7 at 2-3.) This case illustrates why specificity is critical. Once Alvarez learned that ICE was considering deporting him to Mexico, he explained that he would "suffer persecution and torture by cartels and police in Mexico" and feared that deportation to Mexico would lead to "refoulement to El Salvador." (ECF No. 1-1 at 5.) Alvarez supported those assertions with evidence that "migrants and deportees in Mexico, particularly those returned from the United States, face heightened exposure to kidnapping, extortion, assault, forced disappearance, and other forms of violence," as well as subsequent removal "of those individuals to their home countries despite their facing risk of persecution or torture." (*Id.* at 7-8.) The failure of the Notice to specify that ICE was considering deportation to Mexico deprived Alvarez of the ability to raise these arguments at his informal interview.

Respondents seek refuge in the fact that ICE later "informed [Alvarez] that it intended to remove him to Mexico." (ECF No. 9 at 20.) But Respondents concede that ICE provided notice to Alvarez of the prospect of deportation to Mexico only on July 16, 2026, ten days after Alvarez's informal interview. (*Id.*) Respondents cannot cure their failure to comply with their own regulations via subsequent disclosure when the language of § 241.4(*l*) expressly contemplates the informal interview as affording a meaningful "opportunity to respond to the reasons for revocation *stated in the notification*." 8 C.F.R. § 241.4(*l*)(1) (emphasis added).

The lack of specificity in the Notice deprived Alvarez of that opportunity, and that deprivation renders the revocation of Alvarez's OSUP fatally deficient under the plain text of § 241.4(*l*). Because ICE failed to follow its own regulations in revoking Alvarez's OSUP,

Respondents violated Alvarez's due process rights. *See N.B. v. United States*, 552 F. Supp. 3d 387, 400 (E.D.N.Y. 2021) ("[A] due process violation may occur if an agency fails to follow [its] own procedures and regulations.").

Because the lack of specificity in the Notice, standing alone, is a sufficient basis for Alvarez's immediate release, *see Zhang*, 2026 WL 42778, at *4-5, the Court need not reach Alvarez's other grounds for relief. Still, the Court notes that the record includes other procedural deficiencies in the Government's revocation of Alvarez's OSUP that, on their face, appear to constitute additional bases for release. For example, while the notices of removal establish that their contents were relayed to Alvarez in Spanish (*see* ECF Nos. 7-13, 7-15), the Notice revoking Alvarez's OSUP provides no such confirmation (*see* ECF No. 7-7). Thus, beyond the Notice's lack of specificity, "there is no reliable evidence that it . . . provided [Alvarez] with a meaningful opportunity to respond to the reasons given for the revocation." *Zhang*, 814 F. Supp. 3d. at 328.

Additionally, ICE has provided no evidence that Mexico has accepted Alvarez for removal. (*See* ECF No. 1 ¶ 70; ECF No. 10 at 13; *see also* Transcript of Conference at 4-5, *Alvarez v. Catletti*, No. 26-CV-7055 (S.D.N.Y. Aug. 25, 2026) ("[T]here's no specific agreement as to [Alvarez] or travel documents obtained as to him.").) That lack of approval "is highly relevant to the question of whether Petitioner's removal was reasonably foreseeable, and thus lawful under *Zadvydas* [*v. Davis*, 533 U.S. 678, 699 (2001)], at the time he was detained." *Duong v. Maldonado*, No. 26-CV-3189, 2026 WL 1841199, at *3 (E.D.N.Y. June 26, 2026). Put differently, in addition to the procedural defects of the Notice, including its failure to inform Alvarez of the specific changed circumstances underlying his removal, the record raises the more fundamental question of whether any such changed circumstances even exist.

**C. Applicability of 8 U.S.C. § 1225(b)(1)(B)(ii)**

As a final gambit, Respondents contend that the reopening of Alvarez's immigration proceeding following Respondents' (procedurally defective) revocation of his OSUP independently requires that he be detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). (*See* ECF No. 9 at 26-31.) The Court disagrees.

Section 1225(b)(1)(B)(ii) establishes that an alien "shall be detained" during the pendency of their "application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Put differently, after an alien passes a credible fear interview, § 1225(b)(1)(B)(ii) "mandate[s] detention of aliens throughout the completion of applicable [asylum] proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018). But "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* at 297.

Respondents argue that the reopening of Alvarez's immigration proceedings vacated his final order of removal, such that Alvarez "is no longer subject to a final order of removal" and therefore is subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(1)(B)(ii). (ECF No. 9 at 26.) But Respondents provide no support for the proposition that the reopening of an immigration proceeding automatically triggers mandatory detention under § 1225(b)(1)(B)(ii). Respondents cite only cases providing that following the expiration of *parole*, an applicant's detention status "revert[s] back to what it was at the time he had been paroled," including the resurrection of mandatory detention under § 1225(b)(1)(B)(ii). *Rana v. Genalo*, No. 26-CV-849, 2026 WL 1863815, at *6 (S.D.N.Y. June 29, 2026); *see also Lin v. Almodovar*, No. 25-CV-9639, 2025 WL 3706626, at *3 (S.D.N.Y. Dec. 22, 2025). (ECF No. 9 at 27-28.) But those decisions[1]

[1] Respondents' reliance on ECF No. 16 at 45, *Sammy v. Decker*, No. 17-CV-2615 (S.D.N.Y. May 25, 2017), is also inapposite. In his oral ruling, Judge Engelmayer merely reinforced the well-established principle that mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) does not

rely on 8 U.S.C. § 1182(d)(5)(A), which provides that, after the conclusion of parole, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

No such statutory mandate exists for motions to reopen, which are governed by 8 U.S.C. § 1229a(c)(7). Indeed, courts have *rejected* the notion that the reopening of immigration proceeding necessarily vacates the entirety of the original removal order. On this score, *Thao v. Hoover*, No. 26-CV-608, 2026 WL 1384413 (M.D. Pa. May 18, 2026), is instructive. In *Thao*, an immigration court had issued a final order of removal to Laos, the petitioner's home country, but deferred removal under CAT. *Id.* at *1. After the petitioner was released from prison, DHS then served him with notices of removal to El Salvador, Mexico, and Rwanda. *Id.* The petitioner subsequently moved to reopen his immigration proceedings solely as to removal to these third countries, which the immigration court ultimately granted. *Id.* at *2.

The court held that the final order of removal to Laos "was not vacated when administrative proceedings were reopened to address removal to different countries." *Id.* at *5. In so finding, the court emphasized that 8 U.S.C. § 1229a(c)(7)(B) contemplates that motions to reopen will raise "new facts," and the effect of the reopening on the original order "can be resolved by determining whether 'new facts' are about the prior determination or about a new determination." *Id.* Because "the 'new facts' presented by [the petitioner in *Thao*] in the underlying removal proceedings have nothing to do with the removal order to Laos or deferral of removal to that country under [CAT]," but rather "with third countries: Mexico, El Salvador, and

lapse after an alien passes the initial credible fear interview. *Id.* at 44-45. Thus, this ruling offers no guidance on the effect of the reopening of immigration proceedings on a final order of removal.

Rwanda," the reopening of immigration proceedings "does not involve the reopening of the record with respect to the Laos removal order." *Id.*

Here, as in *Thao*, the underlying removal proceedings "have nothing to do with the removal order to [El Salvador] or deferral of removal to that country under [CAT]" and instead deal only with removal to a "third countr[y]: Mexico." *Id.* Indeed, Alvarez's motion to reopen made clear that he sought relief solely from "removal and protection under [CAT] *with respect to Mexico*." (ECF No. 1-1 at 5 (emphasis added).) And the immigration court's order granting reopening did so on the limited basis that DHS revealed a "recent intent to remove [Alvarez] to Mexico." (ECF No. 1-2 at 2.) Thus, neither the motion to reopen nor the order granting the same intimates that the final order of removal to El Salvador or the deferral of removal to El Salvador is subject to review, such that his application for asylum is actively pending. Accordingly, the Court concludes that the reopening of Alvarez's immigration proceedings did not vacate his final order of removal to El Salvador, such that § 1231(a), not § 1225(b)(1)(B)(ii), governs the propriety of his detention. *Accord Thao*, 2026 WL 1384413, at *5 ("[B]ased on the original final removal order with respect to Laos, 8 U.S.C. § 1231(a) applies to Thao.").

As applicable here, § 1231(a)(3) provides the general rule that if the alien "is not removed within the removal period, the alien . . . shall be subject to supervision," not detention. 8 U.S.C. § 1231(a). Section 1231(a)(6) provides the exception: An alien subject to a final removal order under certain statutory provisions inapplicable here, or "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." *Id.* § 1231(a)(6). Respondents offer no argument to this Court—and more importantly, to Alvarez—that Alvarez should be detained under § 1231(a)(6). Respondents' forbearance on this front makes sense in light of Alvarez's

longstanding compliance with his OSUP requirements and lawful residence in New York over the past eighteen months. (*See* ECF No. 1 ¶ 27.)

In any event, because Alvarez's current detention is beyond the ambit of mandatory detention under § 1225(b)(1)(B)(ii), ICE's violation of its own procedures under § 241.4(*l*) in revoking Alvarez's OSUP by failing to provide a legally sufficient notice of revocation necessitates his immediate release from detention. *Accord Zhang*, 2026 WL 42778, at *5.

**III. Conclusion**

"The lawful revocation of the petitioner's supervised release presents a low bar to the Government, and they may yet choose to clear it, but they have not done so on the present record, and accordingly [Alvarez] must be released from custody immediately." *Zhang*, 814 F. Supp. 3d at 330 (cleaned up).

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED.

Respondents are hereby ORDERED to immediately release Alvarez from custody. Respondents shall certify compliance with this order by filing an entry on the docket no later than 12:00 pm on September 4, 2026.

SO ORDERED.

Dated: September 3, 2026
New York, New York

J. PAUL OETKEN
United States District Judge